UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| SUSAN L. WILSON, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:10-CV-2471-B |
| | § | |
| INTERNATIONAL BUSINESS | § | |
| MACHINES CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Plaintiff Susan L. Wilson's Motion to Remand (doc. 6), filed December 29, 2010. For the reasons discussed below, the Court finds that Plaintiff's Motion should be and hereby is **GRANTED**.

## I.

## BACKGROUND

This is a fraudulent inducement claim, wherein Plaintiff Susan L. Wilson ("Wilson") alleges that Defendant International Business Machines ("IBM") made certain misrepresentations to her and that she was ultimately harmed thereby. (*See generally* Pl.'s Original Pet.). In particular, Wilson alleges that IBM repeatedly misrepresented her service reference date, indicating that for retiree benefits purposes, her benefits ran from April 15, 1980, and thus she would be eligible for a thirty-year pension in 2010. (*Id.* at ¶ 24). Because of these misrepresentations, Wilson further contends, she decided not to apply for other jobs within IBM when her job was part of proposed layoffs in early 2009, instead accepting the company's offer of a one year "bridge" to retirement. (*Id.* at ¶¶ 10, 25).

When Wilson subsequently applied for a full retirement benefit in February 2010 after she had completed the retirement bridge and retired, she was informed that her reference date was in fact April 12, 1981. (*Id.* at ¶ 19). The effect of the later service reference date was that her benefits were greatly protracted. Thus, because of IBM's misrepresentations, Wilson alleges, she is not receiving the full retirement benefit she would have received if she had 30 years of service.

Wilson initiated this action in the 160th Judicial District Court of Dallas County, Texas, on November 4, 2010. (Def.'s Notice of Removal 1). She seeks compensatory damages for the misrepresentations detailed above, pre- and post-judgment interest, and attorney's fees. (Pl.'s Original Pet. ¶ 32). On November 11, 2010, IBM removed the case to this Court on the basis of federal question jurisdiction, more specifically ERISA preemption. (Def.'s Notice of Removal 2-4). Wilson thereafter filed her Motion to Remand (doc. 6), arguing that IBM had failed to meet its burden of showing that ERISA did in fact preempt her state law cause of action. (*See generally* Pl.'s Mot. Remand). IBM responded to this Motion (doc. 8), arguing that cases from the Fifth Circuit arising out of similar facts have found ERISA preemption to apply. (*See generally* Def.'s Resp.). Plaintiff filed a Reply (doc. 12), generally realleging her arguments that ERISA preemption does not apply. (*See generally* Pl.'s Reply).

## II.

## LEGAL STANDARDS

A defendant may remove an action filed in state court to federal court if the case could have originally been filed in federal court. 28 U.S.C. § 1441(a). Federal subject matter jurisdiction is limited; federal courts may entertain only those cases involving a question of federal law or those where parties are of diverse citizenship. *See* 28 U.S.C. §§ 1331-1332. The party invoking federal

jurisdiction has the burden of establishing it. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

The only alleged basis for jurisdiction in this case is that the dispute is one involving a question of federal law. (Def.'s Notice of Removal 2-4). Federal question jurisdiction gives district courts original jurisdiction over any civil case "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. To determine whether a claim arises under federal law, courts apply the "well-pleaded complaint" rule. *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908); *PCI Transp., Inc. v. Fort Worth & W.R.R. Co.*, 418 F.3d 535, 543 (5th Cir. 2005) (citing *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 772 (5th Cir. 2003)). The well-pleaded complaint rule requires a federal question be "present[] on the face of [a] plaintiff's properly pleaded complaint" before a federal court may exercise jurisdiction on the basis of federal question. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *PCI Transp.*, 418 F.3d at 543 (citing *Hoskins*, 343 F.3d at 772). An anticipated defense, such as a federal statute having preemptive effect, is generally not enough to establish jurisdiction in federal courts. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003). Consequently, plaintiffs that craft a complaint with solely state-law claims can force defendants into state court even if the defendant has a federal defense.

At the same time, there are two exceptions to the well-pleaded complaint rule: when "Congress expressly so provides [for removal] . . . or when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Beneficial*, 539 U.S. at 8. ERISA is "one such area of complete preemption." *McAteer v. Silverleaf Resorts, Inc.*, 514 F.3d 411, 416 (5th Cir. 2008). The ERISA preemption provision provides that ERISA "supercede[s] any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." 29 U.S.C. § 1144(a)

(emphasis added). This provision is "clearly expansive" such that "relate to" is given its broadest common sense meaning that state law will be preempted "if it has a connection with or reference to such a plan. *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1217-18 (5th Cir. 1992). At the same time, the Fifth Circuit warns against reading "relate to" so broadly as to "extend to the furthest stretches of its indeterminacy." *E.I. DuPont de Nemours & Co. v. Saywer*, 517 F.3d 785, 799 (5th Cir. 2008).

Instead, the Supreme Court directs courts to look at both "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive" and "the nature of the effect of the state law on ERISA plans." *Egelhoff v. Egelhoff*, 532 U.S. 141, 146 (2001). The Supreme Court further directs that Congress implemented the ERISA preemption provision for the purpose of "establish[ing] a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987). In properly balancing all of these considerations to determine whether a state law "relates to" an employee benefits plan, the Fifth Circuit applies a two-part test, requiring that a defendant demonstrate that: "(1) the claim 'adresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan; and (2) the claim directly affects the relationship among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Sawyer*, 517 F.3d at 800 (quoting *Bank of Louisiana v. Aetna US Healthcare Inc.*, 468 F.3d 237, 242 (5th Cir. 2006).

### III.

### ANALYSIS

The parties' briefing centers around Fifth Circuit precedent involving similar facts where the court determined ERISA preemption did or did not apply. Wilson relies on the most recent case, where the Fifth Circuit determined that ERISA preemption did not apply where an employer misrepresented the effect certain decisions would make on an employee's benefit plan. (Pl.'s Mot. Remand 4; Pl.'s Reply 1-3). IBM, on the other hand, relies on three other Fifth Circuit opinions (as well as a case from this District) where the court has determined that ERISA preemption did not apply, once again with seemingly analogous facts. (Def.'s Resp. 5-7). Having considered this precedent and the parties' briefing, the Court finds that Wilson's more recent Fifth Circuit case presents the better analogy to the instant case and accordingly finds that remand is proper.

The case upon which Wilson centers both her Motion to Remand and her Reply is *E.I. DuPont de Nemours & Co. v. Sawyer*, 517 F.3d 785 (5th Cir. 2008). In that case, a group of former DuPont employees sued their former employer, alleging that DuPont fraudulently induced them to terminate their employment with DuPont by promising the employees that their benefits and employment would remain unchanged when they went to work for a DuPont subsidiary. *Id.* at 791. When DuPont subsequently sold the subsidiary, however, the employees' benefits were negatively impacted. *Id.* The employees then brought suit against DuPont for fraud and fraudulent inducement.[1] *Id.* In moving to dismiss these claims, one of DuPont's chief arguments was that they were preempted by ERISA. *Id.* at 792.

---

[1] DuPont, in anticipation of the employees' claims, was the first to file suit, commencing a declaratory judgment action in federal court. *Sawyer*, 517 F.3d at 791. The district court found that it did not have jurisdiction over the case because the claims did not involve the interpretation of an ERISA policy, rather misrepresentations made by DuPont that induced the employees to take potentially detrimental actions. *Id.* The employees subsequently brought their fraud and fraudulent inducement claims federal court. *Id.*

The district court found that the former employees' claims were not preempted by ERISA, and the Fifth Circuit agreed. *Id.* at 792, 800. In particular, the Fifth Circuit found that DuPont failed to demonstrate that the employees' claims "relate[d] to" an ERISA plan for purposes of ERISA's express preemption clause. *Id.* at 800. In reaching this conclusion, the panel applied the two-part test listed above, finding that the claim neither "address[ed] an area of exclusive federal concern" nor "directly affect[ed] the relationship among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Id.* As to the first part of the test, the court reasoned that there was "little danger that the employees' claims [would] intrude upon an area of exclusive federal concern." *Id.* Such intrusion would only occur if, instead of suing for fraudulent inducement, "the employees were claiming that they were wrongfully denied benefits due to them under the terms of the DuPont or [the subsidiary's] ERISA plan, or that either plan was improperly administered." *Id.* The inducement claims only "related to" the misrepresentations involving the sale of the subsidiary, not the terms of the plan itself or the duties and standards of conduct for an ERISA plan administrator. *Id.* In other words, "the heart of the employees' complaint [was] that DuPont fraudulently induced them to terminate their employment with DuPont and accept employment with [the subsidiary]." *Id.*

As to the second part of the test, the Court noted that DuPont served as both employer and plan administrator, while the employees were the plan participants and beneficiaries. *Id.* At the same time, the Court observed that this fact alone was not enough to satisfy the second part of the test—the question is not whether the parties are traditional ERISA entities "in some capacity," rather whether the potentially preempted state law affects "an aspect of the relationship" that is governed by ERISA. *Id.* (quoting *Bank of Louisiana*, 468 F.3d at 243). In other words, a defendant

satisfies this part of the test when the relationship between it and the plaintiff "is so intertwined with an ERISA plan that it cannot be separated." *Id.* (quoting *Bank of Louisiana*, 468 F.3d at 243). The panel found that such was not the case on the facts before it because the employees' fraudulent inducement claims did not affect an area of the parties' relationship that was comprehensively regulated by ERISA—once again, the employees' claims did not involve improper plan administration or require inquiry into the terms of the ERISA plan itself. *Id.* Indeed, the only connection to or examination of the Plan itself would be in the potential calculation of damages, which on its own does not require a finding of preemption. *Id.* at 800 & n. 11.

The Court finds that similar to DuPont, IBM has failed to demonstrate that Wilson's claims "relate to" ERISA under the Fifth Circuit's test, and thus Wilson's claims are not preempted. Closely analogous to the employees in *Sawyer*, Wilson bases her claims in the instant case on her former employer's negligent misrepresentations that induced her to make an employment decision that ultimately reduced her benefits. Like *Sawyer*, the Court finds that there is little danger that Wilson's claims will intrude upon an "area of exclusive federal concern"—Wilson is not claiming that she was denied benefits under the plan or that the plan was improperly administered. Instead, the terms of the plan itself are only relevant as to the possible computation of damages, which *Sawyer* indicates does not, on its own, mean that preemption applies. *See Sawyer*, 517 F.3d at 800 & n.11. Furthermore, the "heart" of Wilson's Complaint goes to the negligent misrepresentations IBM representatives made to her, not the terms of the plan or its administration. IBM fails to satisfy the second part of the ERISA preemption test as well, as Wilson's negligent misrepresentation claims do not affect any aspect of the parties' relationship that is comprehensively regulated by Congress. The fact that IBM was both Wilson's employer and plan administrator, standing alone, is not enough

to satisfy that part of the test. *See id.* at 800. In short, the Court finds that Wilson's negligent misrepresentation claim, the sole basis upon which she seeks relief, neither addresses an area of exclusive federal concern nor affects the parties' relationship under ERISA.

The cases IBM relies upon in arguing that this case does satisfy the Fifth Circuit's two-part ERISA preemption test are unsatisfying. Besides being much older than *Sawyer* (and thus failing to account for more recent Supreme Court precedent), each of these cases is readily distinguishable from the instant case. IBM's reliance upon *Christopher v. Mobil Oil Corp.* is misplaced because that case involved an amended employee benefits plan and more specifically allegations of a "fraudulent scheme" to decrease the workforce by means of the amended plans, analysis of which would require examination of "the operation of the plan prior to the amendment, the language of the plan amendments, and [the employer's] communication to its employees about the terms of the plan amendments." *See Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1218 (5th Cir. 1992). In contrast, Wilson's claims are not dependent upon an examination of the terms of her employee benefits plan.

IBM also improperly relies upon *Cefalu v. B.F. Goodrich Co.*, as the court in that case found that a plaintiff's breach of contract action "relate[d] to" ERISA on the sole baseis that a court would have to look at the employee benefits plan in calculating damages. *See Cefalu v. B.F. Goddrich Co.*, 871 F.2d 1290, 1294 (5th Cir. 1989) ("A state law claim 'relate[s] to' a benefit plan if it has a 'connection with or reference to such a plan.' Appellant's claim has a definite connection to an employee benefit plan. Plaintiff concedes that if he is successful in this suit his damages would consist of the pension benefits he would have received had he been employed by TCI."). More recent Fifth Circuit opinions have held the opposite. *See Sawyer*, 517 F.3d at 800 & n. 11; *Rozzell v. Sec. Servs., Inc.*, 38 F.3d 819, 822 (5th Cir. 1994) (rejecting the proposition that "any lawsuit in

which reference to a benefit plan is necessart to compute plaintiff's damages is preempted by ERISA . . . .").

Finally, IBM's citations to *Degan v. Ford Motor Co.* and *Lee v. Tyco Electronics Power Systems* are also unconvincing because those cases involved purported breaches of "contractual claims to pension benefits" based upon oral contracts. *Degan v. Ford Motor Co.*, 869 F.2d 889, 893 (5th Cir. 1989); *Lee v. Tyco Electronics Power Sys. Inc.*, No. 3:04-CV-2260-D, 2006 WL 1722569, at *5 (N.D. Tex. June 20, 2006). In *Tyco Electronics*, a case from this District that is "materially indistinguishable" from *Degan*, the Court observed, "The [oral] contract, assuming it existed, operated to alter or amend the terms of the Plan as applied to [the plaintiff], and his breach of contract claim is therefore preempted." *Tyco Electronics*, 2006 WL 1722569, at *5-6. The claims in both of those cases satisfy the two-part test followed in *Sawyer*, and they are easily distinguishable in the instant case. In both, the courts found that the oral contracts went to the terms of the plans themselves. Furthermore, because the plan language itself was at issue and the claims affected an area of the parties' relationship that was comprehensively regulated by ERISA. In the instant case, as set forth fully above, IBM has failed to satisfy its burden as to either prong of the two-part test.

## IV.

## CONCLUSION

Because this case does not "relate to" ERISA, ERISA preemption does not apply, and the Court does not have subject matter jurisdiction over the dispute. Accordingly, Plaintiff's Motion to Remand is **GRANTED**.

Plaintiff additionally seeks payment of just costs and expenses, including attorney's fees, incurred as a result of IBM's removal. A federal district court "may require payment of just costs and

any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Courts should only award a plaintiff her attorney's fees where a case is removed without an objectively reasonable basis for doing so. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005); *Howard v. St. Germain*, 599 F.3d 455, 457 (5th Cir. 2010). In light of the extensive analysis required to determine whether federal question jurisdiction is present in the instant case, the Court finds that IBM clearly had an objectively reasonable basis for removal. Accordingly, Wilson's request for costs and attorney's fees is hereby **DENIED**.

    **SO ORDERED.**

    DATED March 22, 2011

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE